**G & M OIL COMPANY,**
**et al., Plaintiffs,**

**v.**

**GLENFED FINANCIAL CORP.,**
**et al., Defendants.**

**Civ. A. No. R–88–2884.**

United States District Court,
D. Maryland.

Dec. 21, 1989.

---

Norris C. Ramsey, Baltimore, Md., for plaintiffs.

James L. Shea, Venable, Baetjer and Howard, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned matter is defendant's ("Glenfed") motion for summary judgment on all counts of the amended complaint.[1] The motion has been fully briefed, supplemental memorandum have been filed, and oral argument on the motion has been heard. For the reasons set forth below, Glenfed's motion will be granted in part and denied in part; in addition, plaintiff ("G & M") will be given leave to amend the complaint to state claims for negligent misrepresentation and promissory estoppel.

This litigation arises out of failed negotiations between Glenfed and G & M to provide G & M with a loan to be used as working capital for its oil distribution business. When G & M approached Glenfed in the spring of 1985, G & M was in dire financial straits. A recent audit had made it apparent to G & M that a working capital loan was necessary in order to expand the business,[2] and perhaps even to keep the existing operations afloat. As a result, G & M sought working capital financing from Glenfed.

Preliminary negotiations between G & M and Glenfed culminated in a letter dated April 11, 1985, from Glenfed's Vice President, Irwin Berger, to G & M's President, Rudolph Gustus. *See* Exhibit 8 to Defendants' Motion for Summary Judgment.[3] In this letter, which was countersigned by Gustus, Glenfed informed G & M that it was "willing to consider a financing arrangement" in which Glenfed would provide loans in exchange for a number of guarantees made by G & M. In particular, Glenfed's loan would be "secured by a first security interest in all of [G & M's] accounts receivable...." In addition, the loan was contingent upon G & M "obtain[ing] a guarantee in form and substance acceptable to [Glenfed] ... covering any deficiency indebtedness from [G & M] up to a maximum of $1 million...." Glenfed also demanded, and timely received, a "good faith deposit of $10,000 to cover its field examination and administrative expenses for processing [G & M's] loan request." According to the letter, acceptance of this money did not "in any way commit or ob-

---

1. This motion supplements a previously filed and briefed motion for summary judgment on the initial complaint.

2. G & M had acquired an oil terminal the previous fall, and was seeking to make fuller use of it.

3. The letter referred to the lender as "Armco Commercial." Glenfed Financial Corporation is the new name for Armco Commercial after the acquisition of Armco Commercial's parent corporation by Glenfed's parent, Glendale Federal. *See* note 1 to Memorandum in Support of Defendants' Motion for Summary Judgment.

ligate [Glenfed] to lend [G & M] money or otherwise extend credit to [G & M] for any purpose." The second to last paragraph of the letter also carried a broad caveat: "[P]lease understand that this letter is not an offer, shall not be construed to impose upon [Glenfed] any obligation to lend and is subject to completion of [Glenfed's] formal credit review."

The parties then proceeded with continuing negotiations and groundwork, including G & M applying for the guarantee from the Maryland Industrial Development Financing Authority ("MIDFA"). Glenfed, for its part, conducted an audit and field review of G & M. On June 26, 1985, Glenfed's President, Richard Ballard, and G & M's President, Rudolph Gustus, signed a second letter confirming Glenfed's "intention to enter into a financing relationship with [G & M]." *See* Exhibit 10 to Defendants' Motion for Summary Judgment. The letter continued: "This intention is subject to the following terms and conditions," including:

4. The advances which are to be made by [Glenfed] to [G & M] shall be secured by a first security interest in all of [G & M's] present and future accounts receivable and inventory. Further, [Glenfed] must be provided with insurance in the amount of $1 million from the Maryland Industrial Development Financing Authority which insurance shall be utilized to reduce [G & M's] indebtedness to [Glenfed] in the event of a liquidation.

Glenfed cautioned that this letter of "intent to finance" shall not "in any way be construed to set forth all the terms and conditions of our proposed financing arrangement with [G & M]" or "to impose any obligation upon [Glenfed] in favor of any other party."

Subsequent to the June 26 letter, G & M alleges that it received continued assurances from Glenfed that the loan would go through, despite the fact that the insurance it obtained from MIDFA was only for 20% of the outstanding indebtedness up to a maximum of $1 million. In the late summer of 1985, a new management team was installed at Glenfed which, apparently, took a fresh look at the proposal to provide G & M with a working capital loan. On August 29, 1985, Glenfed informed G & M that the loan would not be approved unless a higher percentage guarantee was obtained from MIDFA. A week later, on September 5, Glenfed decided to reject the proposed loan to G & M.

G & M subsequently filed suit in state court and Glenfed removed the case to federal court, resting this Court's jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. Plaintiff's amended complaint sets forth six claims: (1) breach of contract regarding the April 11, 1985, letter; (2) breach of contract regarding the June 26, 1985, letter; (3) breach of the duties of good faith and fair dealing; (4) failure to use reasonable care in the consideration and processing of G & M's loan request; (5) negligent and reckless misrepresentation regarding the approval of the loan; and (6) promissory estoppel.[4] Glenfed has moved for summary judgment on each of the claims.

### Standards for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the plaintiff fails to make some minimal showing that the defendant may be liable on the claims alleged. *Bland v. Norfolk & Southern R.R. Co.*, 406 F.2d 863, 866 (4th Cir.1969). The applicable standards for analyzing a motion for summary judgment under Rule 56 are well-established. The defendant[5] seeking summary

---

4. The amended complaint actually sets out only two counts, one premised on breach of contract, the other premised on a variety of tort theories. The identification of specific causes of action is derived from the competing memoranda on Glenfed's summary judgment motion, not from the amended complaint.

5. The analysis is equally applicable, of course, to a motion for summary judgment made by a plaintiff.

judgment bears the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. In determining whether the defendant has sustained this burden, this Court must consider whether, when assessing the evidence in the light most favorable to the plaintiff, a "fair-minded jury could return a verdict for the plaintiff...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Investment Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). That is, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Id.; see also Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984).

## ANALYSIS

1. Breach of Contract Regarding the April 11 letter

G & M's first claim is based on the contract formed by the April 11 letter.[6] Specifically, G & M asserts that the April 11 letter obligated Glenfed to either approve the loan request within thirty days or, if the request was to be rejected, to return the unspent portion of $10,000 "good faith deposit."[7] G & M points out that Glenfed neither approved the loan within thirty days (or ever) nor ever returned the unspent portion of the deposit. Glenfed admits that it did not spend $10,000 conducting its field audit of G & M. It claims, in defense, that its failure to approve the loan request within thirty was due to the poor state of G & M's financial records, which rendered performance of Glenfed's obligations under the purported contract impossible.

It is well-settled law that a party may not bring a breach of contract claim when its own actions prevent the other party from performing. *See Westinghouse Electric Corp. v. Garrett Corp.*, 437 F.Supp. 1301 (D.Md.1977), *affirmed*, 601 F.2d 155 (4th Cir.1979); *see generally* 3A Corbin on Contracts §§ 769–770 (1960). The question before the Court, then, is whether the parties agree on the state of G & M's books and whether, if such a consensus exists, this Court can conclude that the state of G & M's books prevented Glenfed from completing its task.

G & M admits that its general ledger was not current when Glenfed's auditors came on April 15 to assess G & M's financial condition. *See* G & M's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 7. It claims, nonetheless, that "no other deficiency" existed in G & M's financial records. *Id.* While that may be true, the undisputed fact is that G & M's general ledger was not current through the first quarter of 1985 until June 1985. Clearly, this prevented Glenfed from completing the audit called for in the letter within thirty days of April 11. Since it was impossible for Glenfed to perform under the contract because of G & M's actions, G & M may not maintain a breach of contract action based on the April 11 letter.

2. Breach of Contract Regarding the June 26 letter

The parties hotly contest whether the June 26 letter constituted a contract obligating Glenfed to enter into a financing arrangement with G & M by September 30, 1985. G & M argues that the letter, along with certain extrinsic evidence, created such a contract. Glenfed vigorously opposes G & M's position, arguing that the June 26 letter was merely a "letter of intent,"

---

6. The parties apparently accept, at least for present purposes, that the April 11 letter constituted a contract for the initial investigation of the wisdom of a loan from Glenfed to G & M. Since neither party raises the issue of the existence of a binding contract stemming from the April 11 letter, this Court will assume that such a contract exists.

7. The critical portion of the April 11 letter in this respect is as follows: "In the event, [sic] we do not approve your loan request within thirty days of the date of this letter, this [$10,000] deposit will be returned to you less $300 per man day and out-of-pocket expenses." *See* Exhibit 8 to Defendants' Motion for Summary Judgment.

not a "letter of commitment." In support of its position, Glenfed urges that a contract could not exist because the June 26 letter lacked consideration on G & M's part, because material terms were undefined or absent entirely, and because G & M failed to fulfill an express condition precedent. Moreover, Glenfed argues that since the loan agreement between G & M and Glenfed was to be for a three year term, the Maryland Statute of Frauds, Md.Ann. Code art. 39C, § 1, precludes reference to extrinsic evidence to fill in the terms of the June 26 letter.

■ Turning to the last of Glenfed's contentions first, this Court finds that the Statute of Frauds is not applicable to the construction of this purported contract. As G & M points out, *see* Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment at 9 n. 2, the June 26 letter only spoke of an agreement to enter into a three year financing arrangement by September 30, 1985. Thus any performance of the June 26 letter would occur, if at all, within slightly over three months. Thus, the provision of the Statute of Frauds that requires all contracts that cannot be performed within one year to be in writing and signed by the party against whom enforcement is sought is not relevant to this dispute.

■ However, even resorting to extrinsic evidence of the parties' intent, this Court simply cannot find that the June 26 letter constitutes a contract. Standing in the way is the fact that G & M failed to fulfill the express condition precedent contained in the June 26 letter that, in order to qualify for a loan from Glenfed, G & M must first obtain "insurance in the amount of $1 million from the Maryland Industrial Financing Authority." As an express condition precedent, G & M was required to fulfill this provision exactly according to its terms before Glenfed's obligations under the contract would become operative. *See Laurel Race Course, Inc. v. Regal Con-*

struction Co., Inc., 274 Md. 142, 154, 333 A.2d 319 (1975) ("It is fundamental that where a contractual duty is subject to a condition precedent, ... there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused."). Since G & M does not contest the fact that it failed to secure a "flat" $1 million in insurance from MIDFA, Glenfed urges that no contract can be said to exist.

G & M counters by pointing out that MIDFA, by statute, is not empowered to provide a "flat" $1 million in insurance; at most, it can offer protection for the lesser of $1 million or 80% of the insureds indebtedness. Md.Fin.Inst.Code Ann. § 13–132. Moreover, G & M notes that the term at issue was drafted by Glenfed shortly after a meeting among representatives of Glenfed, G & M, and MIDFA at which MIDFA's statutory limits were openly discussed. Thus, G & M urges, the provision must be construed against the drafter (i.e., Glenfed) to allow the insurance actually obtained by G & M to fulfill the contractual condition precedent.

G & M's argument is not persuasive. Accepting, as this Court believes is proper, G & M's contention that the term in the June 26 letter regarding MIDFA insurance must be read in conjunction with the statutory limits imposed on MIDFA, the insurance obtained by G & M still fails to satisfy the condition precedent. Both parties agree that G & M only obtained insurance for the lesser of 20% or $1 million indebtedness.[8] While Glenfed potentially was insured for a full million dollars, in reality the insurance provided far less security than the maximum possible under the statute. Thus, G & M failed to fulfill the express condition precedent that it obtain insurance for the lesser of 80% or $1 million indebtedness.

Moreover, to the extent that G & M believed the insurance provision of the June 26 letter only required some percentage of insurance up to $1 million while

---

**8.** When Glenfed expressed dissatisfaction with this insurance, G & M tried to increase the percentage level to 55%, but was unsuccessful.

In any event, anything short of 80% would fail to fulfill the express condition precedent.

Glenfed construed the term to require a "flat" $1 million in insurance, there existed no meeting of the minds as to that crucial term. In the absence of such a meeting of the minds, no contract ever existed, and hence no action for breach can be maintained. *See Institutional Management Corp. v. Translation Systems, Inc.*, 456 F.Supp. 661 (D.Md.1978); *Klein v. Weiss*, 284 Md. 36, 395 A.2d 126 (1978).

For both of the foregoing reasons, summary judgment will be granted in favor of Glenfed on G & M's breach of contract claim.[9]

### 3. Breach of Duty of Good Faith and Fair Dealing

■ In conjunction with the breach of contract claim regarding the June 26 letter, G & M has also pressed a claim for breach of a duty of good faith and fair dealing with respect to the June 26 letter. This cause of action is viable only if an underlying contract exists. *See Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534, 200 A.2d 166 (1963); *Republic Insurance Co. v. Board of County Commissioners of St. Mary's County*, 68 Md.App. 428, 432, 511 A.2d 1136 (1986). Having found that the June 26 letter does not constitute a contract, this Court also finds that no cause of action for breach of duty of good faith and fair dealing exists. Accordingly, summary judgment will be entered in favor of Glenfed on this count.

### 4. Failure to Use Reasonable Care in the Consideration and Processing of G & M's Loan Request

■ G & M relies on *Jacques v. First National Bank of Maryland*, 307 Md. 527, 515 A.2d 756 (1988), to press a claim that Glenfed breached a duty of care to process G & M's loan application in a timely and responsible manner. *See also Weisman v. Connors*, 312 Md. 428, 445, 540 A.2d 783

(1988). While G & M is no doubt correct that Maryland recognizes such an action in tort, it by no means applies in all contexts; indeed, in the present case, this Court finds that a *Jacques* case of action has no applicability. *Accord Martens v. First National Bank of Maryland*, Civ. No. JFM–88–1188 (D.Md. June 21, 1988).

■ In *Jacques*, the plaintiffs had contracted with their Bank to obtain a home mortgage at a set rate of interest. The Bank agreed to determine what amount of money would be lent to the Jacques at that pre-determined rate. When the Bank completed its loan application review process a month later, it informed the Jacques that they qualified for a loan of only $41,400 at the pre-set interest rate. Since the Jacques needed to secure a loan of $112,000 to purchase the home, they needed to obtain additional financing. However, the dramatic increase in interest rates that occurred while the Bank was processing the Jacques' request made the ultimate cost of the Jacques' mortgage considerably higher. Alleging that they were initially entitled to a larger mortgage at the pre-determined rate of interest, the Jacques successfully brought an action against the Bank for, *inter alia*, breach of the Bank's duty to use reasonable care in the processing of their application. On appeal, the Maryland Court of Appeals upheld the trial court's determination that such a cause of action existed in Maryland.

Writing for the Court of Appeals, Judge McAuliffe stressed two unusual factors present in *Jacques* that warranted imposing a duty of care on the Bank. First, discussing the nature of the proposed transaction, Judge McAuliffe noted "the rather extraordinary provisions contained in the real estate sales contract ... left the Jacques particularly vulnerable and dependant upon the Bank's exercise of due care."[10] *Jacques*, 307 Md. at 540, 515 A.2d

---

9. Since this Court has determined that no contract existed because of the failure to fulfill the express condition precedent or because of a lack of a meeting of minds on that term, this Court need not address Glenfed's contentions regarding lack of consideration or absence of material terms in the June 26 letter.

10. The Court went on to describe the unique nature of the transaction, and the Jacques unusual exposure, as follows:

> The Jacques, while indicating that they would request a loan of $112,000.00, were required by contract to proceed to settlement with

756. Second, discussing the relationship between the Jacques and the Bank, Judge McAuliffe stressed that the "Banking business is affected with the public interest," *Id.* at 542, 515 A.2d 756, and that it was not uncommon to impose "a tort duty to act with reasonable care ... on those who hold themselves out as possessing [a peculiar] skill." *Id.* at 541, 515 A.2d 756.

Neither of the special factors stressed by the Court in *Jacques* are present here. First, there was nothing unusual in the proposed transaction between G & M and Glenfed. G & M was seeking a fairly standard business loan and was in no way "particularly vulnerable and dependent upon [Glenfed's] exercise of due care." *Id.* at 540, 515 A.2d 756. Unlike the Jacques' proposed transaction with the First National Bank of Maryland, G & M's proposed transaction with Glenfed did not expose G & M to any unusual or extraordinary risk if the deal fell apart.

Moreover, the relationship between G & M and Glenfed was decidedly different from the relationship at issue in *Jacques*. While the Jacques were unrepresented lay persons seeking a home mortgage from their local Bank, G & M was an established business being shepherded through the loan process by undoubtedly competent counsel. The policy rationale of imposing a special duty of care upon professionals who hold themselves out to the general public as possessing special skill to solve complex problems has no application here. *Cf. St. Paul at Chase v. Manufacturers Life Ins.*, 262 Md. 192, 219–20, 278 A.2d 12, *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971). Presently before the Court is a financing deal gone awry between two businesses, bargaining at arms length and with their eyes open; no special duty can be imposed on either party in such a circumstance. *See Martens v. First National Bank of Maryland, supra.* Accordingly, summary judgment will be granted in favor of Glenfed on this claim.

5. Negligent Misrepresentation of Promissory Estoppel

Finally, G & M asserts claims for negligent misrepresentation regarding the likelihood of the loan being approved and for promissory estoppel based upon such representations. It appears to this Court that the plaintiffs may be able to avoid summary judgment on these two causes of action. However, the state of G & M's complaint is such that neither the negligent misrepresentation nor the promissory estoppel claims are clearly presented. They are only found among the variety of possible tort theories offered in Count II, with no effort being made by Plaintiff to state clearly and cleanly the basis for such theories in the complaint; thus, the defendant was unable to clearly address these theories in the motion for summary judgment. As earlier stated, *supra* note 4, the Court was only able to identify the possible bases of the causes of action by examination of the contentions in the memoranda exchanged by the parties. As a result, neither party has focused sufficient attention on these claims. If G & M desires to bring such claims, it must amend its complaint to set out these claims in accordance with Rule 8(a), Fed.R.Civ.P. Glenfed must have the opportunity to answer such claims if they are asserted, and focused discovery must be had. At that point, the parties may, if they deem it appropriate, file mo-

whatever loan they could obtain at the agreed rate of interest. Therefore, when the Bank agreed to process the application for a loan and agreed to determine the amount of the loan for which the applicants qualified, it undertook a significant responsibility. In accepting the loan application for processing, the Bank had knowledge that the Jacques would be legally obligated to either proceed to settlement with the loan determined by the Bank or forfeit their deposit of $10,000.00 and lose any benefit of their bargain. Of course, ordinarily the Jacques would have had the additional option of seeking alternative financing after the Bank apprised them of the amount for which it considered them qualified. However, in view of the dramatic increase in the prime rate of interest that had occurred while this loan was being processed and the limited time available to the Jacques under the contract to obtain financing, successful resort to this alternative appeared doubtful.

*Id.*, 307 Md. at 540–41, 515 A.2d 756 (footnote omitted).

tions for summary judgment addressed to these claims. This Court will then be in a position to rule on such motions. For the time being, however, this Court will grant the motion for summary judgment filed by Glenfed as to all discernable tort theories incorporated in Count II except negligent misrepresentation and promissory estoppel, and will direct G & M to amend its complaint to clearly and properly state such claims, providing that such amended complaint is filed within 20 days of the issuance of this Memorandum and Order.

Accordingly, for the reasons set forth herein, it is this 21st day of December, 1989, by the United States District Court for the District of Maryland,

ORDERED:

1. That Glenfed's motion for summary judgment on all counts of the amended complaint is GRANTED for the following claims:

a) G & M's claim for breach of contract regarding the April 11 letter;

b) G & M's claim for breach of contract regarding the June 26 letter;

c) G & M's claim for breach of the duty of good faith and fair dealing regarding the June 26 letter; and

d) G & M's claim for breach of the duty of care in the processing of the loan application.

2. That Glenfed's motion for summary judgment on all counts of the amended complaint is DENIED with respect to G & M's claims for negligent misrepresentation and promissory estoppel;

3. That G & M is DIRECTED to file an amended complaint within 20 days hereof to clearly and properly state claims for negligent misrepresentation and promissory estoppel, if it desires to state such claims.