**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1520**

BLAKE R. VAN LEER, II,

            Plaintiff – Appellant,

      v.

DEUTSCHE BANK SECURITIES, INCORPORATED,

            Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.    James  K.  Bredar,  District  Judge. (1:10-cv-01076-JKB)

Argued:  March 21, 2012                   Decided:  May 2, 2012

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.   Judge Diaz wrote the opinion, in which Judge Duncan and Judge Keenan joined.

**ARGUED:**  Norman  Lang  Smith,  Jeffrey  Eric  Nusinov,  FISHER  & WINNER,  Baltimore,  Maryland,  for  Appellant.    Sanford  M. Saunders,  Jr.,  GREENBERG  TRAURIG,  LLP,  Washington,  D.C.,  for Appellee.   **ON BRIEF:**  Laura Metcoff Klaus, GREENBERG TRAURIG, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Blake R. Van Leer, II appeals the district court's order dismissing his action and denying him leave to amend his complaint. Because Van Leer's proposed amended complaint failed to establish any plausible claims under Maryland law,[1] we conclude that any amendment to his original complaint would have been futile and the district court did not abuse its discretion by denying him leave to amend. We accordingly affirm the judgment of the district court.

I.

A.

We accept as true the facts alleged in Van Leer's complaint. See Aziz v. Alcolac, Inc., 658 F.3d 388, 390 (4th Cir. 2011).

Van Leer worked in the waste-handling industry, developing solid waste-disposal facilities in Maryland and Virginia and then selling them to interested firms. One of these developments, the King George County Landfill in Virginia, flourished in the early 1990s. Van Leer ultimately sold the rights to the landfill to Waste Management, Inc., which agreed

---

[1] The parties agree that Maryland law governs adjudication of this action.

2

to pay him royalties ("Royalty Stream") totaling over $1.3 million per year for roughly forty years.

Not all of Van Leer's projects rivaled the success of the King George County Landfill. Indeed, a bad investment in his next development caused him to default on several loan agreements. As a result, Van Leer filed for chapter 11 bankruptcy in 1999. For the next eight years, he operated his business as a debtor in possession and used proceeds from the Royalty Stream to cover his expenses.

Seeking to convert the Royalty Stream into enough money to emerge from bankruptcy, Van Leer in early 2007 decided to sell the asset or pledge it as collateral for a loan. His broker contacted Deutsche Bank Securities, Inc. ("Deutsche Bank") to gauge the firm's interest in loaning Van Leer money secured by the Royalty Stream or purchasing it outright. After making progress in preliminary discussions, Van Leer and Deutsche Bank executed a Confidentiality Agreement on April 17, 2007. Van Leer agreed to provide Deutsche Bank "with certain written material containing material non-public information relating to the Transaction, the royalty payments, the waste disposal facility and underlying transactions and participants" to permit the firm "to evaluate the potential purchase of [the Royalty Stream]." J.A. 17. Deutsche Bank, for its part, pledged to use the confidential information "for the sole purpose of

3

determining [its] interest in participating in the Transaction." Id. The Confidentiality Agreement provided that, among other categories, any information "that is or becomes publicly available" or "is known by [Deutsche Bank] prior to its disclosure by [Van Leer]" is not considered confidential information and is therefore not subject to the terms of the agreement. Id.

Discussions continued between the parties, culminating in a May 14 letter from Deutsche Bank to Van Leer. Deutsche Bank stated in the letter that, "based on [its] preliminary review of information provided to [it] by [Van Leer], [its] understanding of the Financing Transaction . . . and subject to satisfaction of all conditions outlined below," it was "interested" in purchasing the Royalty Stream for approximately $23 million. Id. 19. Deutsche Bank included a number of qualifications. First, it provided that the letter did not constitute a binding commitment and any subsequent binding commitment would be memorialized in a separate written agreement. Second, Deutsche Bank subjected any future commitment to five distinct conditions, including the bank's "completion of, and satisfaction with the results of, [its] business, legal, tax, financial, accounting, environmental and other due diligence." Id.

4

After sending the letter, Deutsche Bank ceased all communication with Van Leer and did not respond to any of his further inquiries. Over a month later, on June 26, the Creditors' Committee overseeing Van Leer's bankruptcy announced that it would auction the Royalty Stream. With no commitment from Deutsche Bank, Van Leer was unable to complete a transaction with a buyer to forestall the auction. Deutsche Bank submitted the high bid of $16.9 million at the auction, obtaining the rights to the Royalty Stream. The bankruptcy court confirmed the sale and closed Van Leer's bankruptcy proceedings.

## B.

Almost three years after the auction of the Royalty Stream, Van Leer filed suit against Deutsche Bank. His original complaint asserted five claims: breach of contract, negligence, tortious interference with prospective business opportunity, negligent misrepresentation, and fraud. The thrust of Van Leer's complaint was that Deutsche Bank shirked its obligations to him by failing to seriously consider his application for a loan or sale, leading him to believe that it was processing his application in good faith, and using his confidential information to purchase the Royalty Stream at auction for a lower price than the parties had negotiated.

5

Deutsche Bank responded by moving to dismiss Van Leer's complaint. Finding that Van Leer's complaint included nothing more than conclusory allegations and baseless legal conclusions, the district court granted Deutsche Bank's motion and dismissed the action.

Van Leer then filed a Rule 59(e) motion to alter or amend the judgment, seeking leave to file an amended complaint. As part of this motion, Van Leer attached a proposed amended complaint further detailing his allegations and striking his tortious-interference claim.

Van Leer alleged that Deutsche Bank breached its contract with him by failing to "consider and process" his loan or sale application in good faith and by neglecting to "conduct due diligence in consideration" of the application. J.A. 199. Van Leer stated that he relied on Deutsche Bank's promise that it would evaluate his application and refrained from pursuing transactions with other parties. He further alleged that Deutsche Bank "breached its contractual obligations by using the [confidential] information that it received" from him for "its own purchase from the bankruptcy auction." Id. 200. Finally, Van Leer claimed that Deutsche Bank breached the covenant of good faith and fair dealing.

On the negligence count, Van Leer alleged that Deutsche Bank, "as the holder of a public trust . . . , had a duty to

consider and process [his] . . . application in good faith and with reasonable diligence" and "a duty not to compete with its customer, and not to use its favored position to his detriment." Id. 201. It breached that duty, according to Van Leer, by failing to process his application, using confidential information for its own benefit in competition with him, and failing to act "reasonably and honestly" in purchasing the Royalty Stream. Id. Van Leer alleged that Deutsche Bank's actions prevented him from lining up another buyer.

Van Leer's negligent-misrepresentation count included similar claims. He alleged that Deutsche Bank owed him a duty of care "to ensure that its representations were truthful concerning its intention to consider and process [his] . . . application in good faith and with reasonable diligence." Id. 203. According to Van Leer, Deutsche Bank falsely stated that it would consider his application, prompting him to justifiably forgo pursuing other sale options.

On the final count, raising a fraud claim, Van Leer alleged that Deutsche Bank falsely stated that it intended to act with due diligence in processing his application when it knew that it did not plan to conduct any review. Instead, claimed Van Leer, Deutsche Bank "had already launched a plan to purchase the Royalty Stream from the bankruptcy, depriving Van Leer of his opportunity to sell the Royalty Stream himself." Id. 205.

7

The district court denied Van Leer's motion to alter or amend the judgment. Discerning no error in its previous ruling, it reiterated that dismissal of Van Leer's original complaint was appropriate. Turning to Van Leer's request for leave to amend his complaint, the court found that the proposed amended complaint contained the same fatal deficiencies as the original complaint. Van Leer's proposed amended complaint, determined the court, amounted to nothing more than further conclusory allegations and unfounded speculation. The court therefore denied leave to amend as futile.

Van Leer appeals only the district court's denial of his motion for leave to amend the complaint.

II.

We review the district court's denial of leave to amend for abuse of discretion. US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 320 (4th Cir. 2010). "[L]eave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009). We adjudge amendment futile when the proposed amended complaint fails to state a claim. United States ex rel.

8

Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A reviewing court must " 'take the facts in the light most favorable to the plaintiff,' " but it need not accept legal conclusions drawn from those facts or " 'unwarranted inferences, unreasonable conclusions, or arguments.' " Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). Indeed, a plaintiff must do more than provide labels and conclusions--"a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A plaintiff will not successfully resist dismissal if he provides mere "naked assertions devoid of further factual enhancement" or his allegations establish only "a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (internal quotations and alteration omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

9

between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). In the final analysis, a plaintiff must "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## III.

Van Leer argues that the district court abused its discretion by denying him leave to amend his complaint. He maintains at the outset that the court applied an inappropriately demanding standard when determining whether his proposed amended complaint could survive dismissal. Turning to the specifics of his allegations, Van Leer asserts that he has included facts sufficient to establish four claims to relief that are facially plausible.

We conclude that the district court did not abuse its discretion on this issue. In contending otherwise, Van Leer overlooks the significant changes to the dismissal landscape wrought by Twombly and Iqbal. Applying those standards to Van Leer's proposed amended complaint, we find that he has failed to "nudge[] [his] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570.[2]

---

[2] Deutsche Bank maintains that this court lacks jurisdiction to adjudicate Van Leer's action, which it characterizes as a collateral attack on the bankruptcy court's final order. In so
(Continued)

10

A.

Van Leer first alleges that Deutsche Bank breached its contractual obligations to him by failing to consider his application for a loan or sale, neglecting to perform due diligence, and using his confidential information for its own purposes. These allegations grossly overstate the nature of the contractual relationship between the parties and otherwise rely on conclusory claims, rendering dismissal appropriate.

Although Van Leer states that Deutsche Bank operated under a contractual duty to consider his loan application in good faith and conduct due diligence, he points to no provision memorializing such an obligation. Nor could he. The Confidentiality Agreement constitutes the sole binding contract between Van Leer and Deutsche Bank. Under that agreement, Deutsche Bank agreed only that it would use Van Leer's

---

doing, Deutsche Bank misinterprets Van Leer's claims. Van Leer is not asking the district court to invalidate the sale of the Royalty Stream. Rather, he is requesting money damages to compensate him for the money that he allegedly lost when Deutsche Bank elected not to buy the Royalty Stream directly from him and instead purchased it for a lower price at auction. We--and the district court--may properly resolve Van Leer's claims without interfering with the bankruptcy's court's long-completed proceedings. Indeed, the bankruptcy court recognized as much. Suggesting that "Van Leer ought to take his marbles and go home," J.A. 149, the court nevertheless recognized that Van Leer could initiate a later proceeding to raise his claim for damages stemming from the sale.

11

confidential information "for the sole purpose of determining [its] interest in participating in the Transaction." J.A. 17. The document did not obligate Deutsche Bank to consider Van Leer's application or conduct due diligence. As Van Leer points out, Deutsche Bank's May 14 letter to him mentioned due diligence. But it did not mandate that the firm conduct due diligence or even consider Van Leer's application, stating only that any subsequent formal agreement was subject to the completion of due diligence. And, in any event, Deutsche Bank expressly indicated that the letter was not a binding commitment, which comported with Maryland law on the subject. See Paramount Brokers, Inc. v. Digital River, Inc., 126 F. Supp. 2d 939, 945 (D. Md. 2000) (reasoning that letter of intent generally does not constitute a binding contract). Because no contract between the parties demonstrates that Deutsche Bank agreed to either review Van Leer's application or conduct due diligence, his allegations on this score are legally deficient.

Van Leer's confidentiality allegation is, however, grounded in the text of an operative agreement between the parties. He alleges that Deutsche Bank used confidential information for its own benefit, violating its duty to use the disclosures "for the sole purpose of determining [its] interest in participating in the Transaction," J.A. 17. Fatal to Van Leer's claim is his failure to provide any gloss on these bare assertions. Indeed,

12

he does not indicate what confidential information he provided to Deutsche Bank or how the bank could have used that information for its own advantage. In omitting this critical discussion, Van Leer engages in little more than "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555. Dismissal was therefore appropriate because the district court was not bound to accept as true his conclusory allegations "devoid of further factual enhancement," Iqbal, 129 S. Ct. at 1949 (internal quotations omitted).

Blending his contractual allegations into a global claim, Van Leer alleges finally that Deutsche Bank violated its duty of good faith and fair dealing. Such a claim, though recognized by Maryland law, requires a plaintiff to demonstrate that the defendant "act[ed] in such a manner as to prevent [the plaintiff] from performing his obligations under the contract." Parker v. Columbia Bank, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992); see also E. Shore Mkts., 213 F.3d at 184 ("[T]he implied duty of good faith and fair dealing as recognized in Maryland requires that one party to a contract not frustrate the other party's performance."). Van Leer has not alleged that Deutsche Bank prevented him from abiding by his duties under the Confidentiality Agreement. And because he has failed to detail how Deutsche Bank used his confidential information in contravention of the Confidentiality Agreement, Van Leer is

13

unable to demonstrate that the bank did not perform its contractual obligations in good faith. His proposed amended complaint therefore fails to state a claim for a breach of the implied covenant of good faith and fair dealing.

## B.

Van Leer's negligence claim revolves around Deutsche Bank's alleged breach of its duty to consider and process his loan or sale application in good faith and with reasonable diligence. Van Leer is unable to establish that Deutsche Bank owed him any duty apart from its contractual obligations, and his proposed amended complaint consequentially fails to state a claim for negligence.

Claims of negligence under Maryland law must establish four familiar elements: (1) a duty owed to the plaintiff; (2) a breach of that duty; (3) a causal relationship between breach and harm; and (4) damages. <u>Jacques v. First Nat'l Bank of Md.</u>, 515 A.2d 756, 758 (Md. 1986). Dealings between a bank and its customer generally do not allow for claims sounding in negligence. In such an instance, the relationship between the bank and customer is contractual in nature, not giving rise to an independent duty. <u>Parker</u>, 604 A.2d at 532. Some cases, to be sure, present facts so unique that courts will impose an independent duty on a bank in regard to its transactions with a

14

customer.  See, e.g., Jacques, 515 A.2d at 759-63.  Yet this is the exception rather than the rule.

Jacques, on which Van Leer principally relies in an effort to establish that Deutsche Bank owed him a noncontractual duty, involved a highly irregular combination of factors that the court found significant.  In that case, the plaintiffs agreed to purchase a house and applied to the defendant bank for a loan to facilitate the transaction.  Id. at 756-57.  The bank sent them a letter stating that the plaintiffs qualified for a $74,000 loan and that it would hold the loan's interest rate for ninety days.  Id. at 757.  Shortly thereafter, however, the bank indicated that it had made a mistake and could loan the plaintiffs no more than $41,400.  Id.  The plaintiffs, unsatisfied with those terms, sought financing from another bank, but interest rates had skyrocketed by that time, making the parameters of other loans unpalatable.  Id.  They instead elected to accept the bank's offer of $41,400 and secure personal loans to cover the remainder of the needed financing.  Id.  The plaintiffs then filed suit against the bank, alleging negligence.  Id.

The court began its analysis by noting that, "[w]here the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability."

15

Id. at 759.  Referring to the "rather extraordinary financing provisions contained in the real estate sales contract" that "left the [plaintiffs] particularly vulnerable and dependent upon the Bank's exercise of due care," the court found such an intimate nexus present in the case before it.  Id. at 762–64. The court pointed to three elements of the relationship between the bank and the plaintiffs that counseled imposing a tort duty on the bank:  the requirement that the plaintiffs proceed to loan settlement with whatever amount they could obtain at the agreed rate of interest, the choice between accepting a loan or forfeiting their $10,000 deposit, and the dramatic increase in interest rates during the loan processing that precluded them from finding another bank for financing.  Id. at 762–63.

The relationship between Van Leer and Deutsche Bank includes none of the extraordinary factors that the court found critical to the disposition in Jacques.  We accordingly conclude that the parties' relationship is strictly contractual and the district court properly found that Deutsche Bank owed no tort duty to Van Leer.  See G&M Oil Co. v. Glenfed Fin. Corp., 782 F. Supp. 1078, 1084 (D. Md. 1989) (finding no duty of care and distinguishing case before it, in which plaintiff sought "a fairly standard business loan," from Jacques, in which plaintiffs were exposed to extraordinary risk if deal fell apart).  Van Leer simply alleges no facts that would convert his

16

relationship with Deutsche Bank from the standard bank-customer variety into something so unique as to compel a court to impose a noncontractual duty on the bank.  Establishing no duty of care on the part of Deutsche Bank, Van Leer fails to state a claim for negligence.[3]

<br>

C.

Turning to Van Leer's claim of negligent misrepresentation, we conclude that it fails for the same reason as his negligence claim.  Under Maryland law, a plaintiff alleging negligent misrepresentation must show that the defendant owed a duty of care to the plaintiff.  Walpert, Smullian & Blumenthal, P.A. v. Katz, 762 A.2d 582, 588 (Md. 2000).  Van Leer is unable to

---

[3] Van Leer also relies on an Oklahoma case, Djowharzadeh v. City National Bank & Trust Co., 646 P.2d 616 (Okla. Civ. App. 1982).  This case is inapposite, for at least two reasons. First, we are applying Maryland law, so Oklahoma's pronouncements that contradict Maryland precedent are not relevant.  Second, the plaintiff in that case pled compelling facts not at issue here--namely, that the plaintiff had disclosed confidential information about a bargain-priced property that was not yet on the market in conjunction with his loan application, the bank denied the loan, and the wives of two of the bank's executives used the plaintiff's confidential information and bought the property, id. at 617-18.  Here, however, Van Leer has not described what confidential information he provided Deutsche Bank or how the bank used that information to its advantage.  Indeed, in contrast to the secretive deal at issue in Djowharzadeh, the public record of the bankruptcy court revealed that the Creditors' Committee planned to auction the Royalty Stream.

17

establish that Deutsche Bank owed him a duty of care, see supra Section III.B, so he has failed to state a claim for negligent misrepresentation.

D.

Van Leer alleges finally that Deutsche Bank committed fraud by falsely stating that it was carrying out due diligence when it actually did not intend to perform such due diligence. Van Leer claims that Deutsche Bank "launched a plan to purchase the Royalty Stream from the bankruptcy, depriving [him] of his opportunity to sell the Royalty Stream himself." J.A. 205. Given the heightened pleading standards governing allegations of fraud, we find that Van Leer's proposed amended complaint fails to state an actionable fraud claim.

Fraud under Maryland law includes five elements: (1) the defendant made a false representation to the plaintiff; (2) the defendant either knew that the representation was false or made it with reckless indifference as to its truth; (3) the defendant made the misrepresentation for the purpose of defrauding the plaintiff; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff suffered damages resulting from the misrepresentation. Gourdine v. Crews, 955 A.2d 769, 791 (Md. 2008). The Federal Rules of Civil Procedure mandate that a plaintiff alleging fraud "state with

18

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Van Leer's general allegations are insufficient to satisfy Rule 9's heightened pleading standard, and dismissal is therefore proper. He eschews the injunction to "state with particularity the circumstances constituting fraud," id., instead asserting conclusorily that Deutsche Bank "launched a plan to purchase the Royalty Stream from the bankruptcy," J.A. 205. Van Leer's allegations are all the more lacking when viewed with reference to the public record of the bankruptcy proceedings, which revealed that the Creditors' Committee planned to auction the Royalty Stream and that the highest bid submitted to that point was only $11.5 million. Van Leer puts forth labels and conclusions in an effort to convert Deutsche Bank's decision--based on publicly available information--to purchase the Royalty Stream at auction into something more nefarious. But these "naked assertions devoid of further factual enhancement," Iqbal, 129 S. Ct. at 1949 (internal quotations and alteration omitted), are not enough to counter dismissal, particularly when viewed through the prism of Rule 9.

19

IV.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>